559 P.2d 701

Perry KINCHELOE and Alvene Kincheloe, husband and wife, Appellants,

v.

PIMA COUNTY, a body politic, Appellee.

No. 2 CA–CIV 2109.

Court of Appeals of Arizona, Division 2.

Jan. 13, 1977.

**146**

Rees, Mercaldo & Smith, P. C. by Paul G. Rees, Jr., Tucson, for appellants.

Stephen D. Neely, Pima County Atty. by John R. Neubauer and Howard L. Baldwin, Deputy County Attys., Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

The issue in this action for declaratory relief is whether appellants were forced by economic duress to enter into a sewer connection agreement with Pima County.

Appellants own forty acres of land in Tucson, Arizona. In 1956, they built a residence on the land and desired to connect it to a sewer of Sanitary District No. 1, Pima County.[1] There was a rise on appellants' land which caused water from the southern portion of the land to flow south and water in the northern portion to flow north. The new home was on the southern portion of the property, a little over 100 feet north of the end of the existing sewer. It was necessary to extend the sewer along Flowing Wells Road by the construction of a six-inch pipe and the construction of a four-inch pipe which ran from appellants' home to the six-inch pipe on Flowing Wells Road. The line which appellants constructed was known as multiple 199. The term "multiple" means that a portion of the sewer line is constructed by a private individual, and that if other individuals desire to connect to it following its construction, they must pay a fee to the sanitary district, or in this case, its successor, Pima County. This fee is then paid to the private individual who built the line.

After construction of the sewer line, appellants agreed to sell it to Pima County. The bill of sale executed by them provided in pertinent part:

"Second party . . . *shall be entitled to connect to the above described sewerage system without service or connection charge,* provided, however, that it is specifically understood that no connection may be made to any of the said lines without a written permit for each such connection being first obtained from second party. Second party shall have the right to make its usual charges for recording of connection agreements." (Emphasis added)

The six-inch line was installed at a cost of $330 to appellants. The four-inch lateral line had insufficient fall according to engineering standards; therefore, appellants agreed to be responsible for the maintenance of the four-inch line. This four-inch line was only able to serve appellants' home.

In subsequent years appellants transferred various portions of their property. In 1970, they owned only about sixteen acres on which they decided to build a trailer park, which would surround their residence.

Appellants retained Blanton & Company, architects and engineers, to design the trailer park. Mr. Goorwitch, a Blanton & Company engineer, was of the opinion that he could not connect the sewer system of the trailer park to multiple 199 because the line was too small and the slope of the land was primarily to the north. He therefore designed the sewer system to connect near the northeast corner of appellants' property to a Pima County sewer line known as multiple 458 which flows north and had been constructed by some private individuals some years after appellants' home was built. Multiple 458 was in a different system from multiple 199. It flowed north and ultimately discharged at the Ina Road treatment plant. Multiple 199 flowed south and was part of another system that discharged into the City of Tucson treatment plant. There were no pipelines connecting multiple 458 and multiple 199.

---

1. Pima County is the successor in interest to all the rights and liabilities of Sanitary District No. 1.

Appellants proceeded to negotiate with contractors and subcontractors to secure all the necessary permits. In February 1971, appellants received a proposal from C & D Pipeline, Inc., to construct and install the sewer lines in the trailer park. This proposal indicated that it did not include the Pima County Sanitation Department inspection fee of $35 nor the connection fee of $12,960.

On April 19, 1971, appellants' attorney wrote a letter to the Pima County Board of Supervisors setting forth appellants' contention that they were entitled to connect the trailer park sewer system to the Pima County sewers without payment of any additional fees pursuant to their 1956 Bill of Sale. Without waiting for a response to this letter, appellants arranged for and obtained interim construction financing at the Southern Arizona Bank on May 18, 1971. Under this interim construction loan, it was not necessary for appellants to pay any interest until they actually withdrew funds from the bank.

On May 21, 1971, Mr. Kincheloe went to the Pima County Sanitation Department office for the purpose of securing a permit to connect the trailer park sewer system to multiple 458. At that time he had spent approximately $40,000 for the initial construction of the trailer park. Mr. Kincheloe testified that he informed a representative of the sanitation department that he was entitled to connect the trailer park sewer system to multiple 458 without the payment of any fees. Mr. Kincheloe's request was denied and on May 21, 1971, he entered into an installment sewer connection agreement with the county whereby in exchange for permission to connect his system to multiple 458, he agreed to pay the county the sum of $12,960, payable $1,115 upon the execution of the agreement and $1,080 on the 21st day of each month commencing June 21, 1971, until the entire sum was paid.

It is appellants' contention that the only reason Mr. Kincheloe entered into the 1971 installment sewer agreement was economic duress, that is, that at the time he executed the agreement he had no alternative. He asked the trial court to set aside the 1971 agreement and require Pima County to abide by the 1956 agreement.

The trial court found the 1956 Bill of Sale to be ambiguous but nevertheless found that there was no economic duress and Pima County should have judgment for the full amount due and owing. Appellants claim the trial court erred in this respect and further erred when it entered a judgment requiring appellants to pay the full amount due and owing on the 1971 agreement without provision for installment payments pursuant to a written stipulation of the parties which was filed in court.

Although the interpretation of an instrument is a question of law to be determined by this court independently, *Polk v. Koerner*, 111 Ariz. 493, 533 P.2d 660 (1975), for the purpose of this appeal we assume the Bill of Sale to be ambiguous and discuss only the claim of economic duress or business compulsion.

In *Colvin v. Superior Equipment Company*, 96 Ariz. 113, 392 P.2d 778 (1964), the Superior Equipment Company brought suit against Colvin to recover a deficiency arising from the repossession sale of a power shovel under a conditional sales contract. Colvin defended on the grounds, inter alia, that the contract had been rescinded. The facts showed that the power shovel broke during operation due to an alleged defectively welded replacement part. The shovel was being used at the time by Colvin in the construction of a dam. Colvin notified Superior Equipment Company immediately after the accident but it refused to do anything, claiming that the warranties on the shovel had either expired or were non-existent. After Superior denied responsibility, Colvin repaired the shovel and completed the construction work on the dam. Colvin then told Superior to come and get the shovel, contending that the contract was rescinded. Superior claimed that the repair and use of the shovel constituted a ratification of the conditional sales contract. Colvin countered this contention by alleging that he acted under "business compulsion" since the broken shovel was needed to complete his job. On appeal, the Supreme

**148**

Court found that Superior was incorrect in its assertion that the shovel was not under a warranty or that the warranty had expired. Nevertheless no "business compulsion" was found and the court held that Colvin had waived the breach by his conduct. The court, in discussing the doctrine of business or economic compulsion, stated that it is merely the modern form of duress and that the person claiming business compulsion must show that he agreed to an *illegal exaction.* It held that Superior's denial of liability to repair the shovel and its denial of the existence of any applicable warranty is the same as a "threat to stand suit" which does not constitute an illegal exaction.

The case at bench is analogous to *Colvin,* supra. The county interpreted the Bill of Sale to mean that appellants had the right to free sewer connections only with respect to multiple 199 or the new sewer lines which had replaced multiple 199, but not to multiple 458 which constituted a separate and distinct system. The county's refusal, like Superior's denial of liability, was the same as a threat to stand suit. It was not an illegal exaction and when Mr. Kincheloe signed the installment agreement he was not acting under business or economic compulsion.

The court did err, however, when it refused to correct its judgment to reflect the stipulation of the parties.

The judgment is modified to show that the principal balance of $11,845.50 be paid in installments of $1,080 per month, the first monthly payment due on and before the 21st day of the month after the date of the issuance of the mandate in this case and on the 21st day of each and every month thereafter until paid; that interest on delinquent payments including the sum of $2,374.08 found to be the amount of interest due on the 26th day of March 1975, be paid forthwith.

The judgment as modified is affirmed.

HATHAWAY and JACOBSON, JJ., concur.