613 P.2d 1275

**Paul J. JOHNSON and Anna M. Johnson, his wife; and Paul Johnson Jewelers Inc., an Arizona Corporation, Plaintiffs-Appellants,**

v.

**AMERICAN NATIONAL INSURANCE COMPANY, an insurance company, Defendant-Appellee.**

**No. 1 CA–CIV 4421.**

Court of Appeals of Arizona, Division 1, Department B.

May 6, 1980.

Rehearing Denied June 23, 1980.

Review Denied July 15, 1980.

Bosco, Goldman & Kaplan by Michael A. Bosco, Jr., Phoenix, for plaintiffs-appellants.

Gust, Rosenfeld, Divelbess & Henderson by Morgan M. Gust, Phoenix, for defendant-appellee.

## OPINION

O'CONNOR, Judge.

Appellants, Paul J. Johnson and Anna M. Johnson, husband and wife, and Paul Johnson Jewelers, Inc., an Arizona corporation, filed an action in the Maricopa County Superior Court seeking recovery against appellee, American National Insurance Company, and against Lomas & Nettleton Company for failure to fund a loan commitment to appellant. There were seven counts in the complaint. The trial court granted a motion to dismiss filed by defendant Lomas & Nettleton Company. There was no appeal from that order of dismissal. The trial court also granted a motion by appellee, American National Insurance Company, to dismiss four counts of the complaint. The trial court subsequently granted a motion of appellee for summary judgment on the remaining counts of the complaint. The trial court's orders of dismissal of the complaint against American National Insurance Company and for summary judgment against appellant are the subject of this appeal. We affirm the action of the trial court.

Appellee, American National Insurance Company, agreed to lend $465,000.00 to appellants on certain terms and conditions contained in letters signed by the parties. Appellant, Paul J. Johnson, also obtained a life insurance policy on his life from appellee. Subsequently, appellee refused to fund the loan and to return the loan commitment fees and life insurance premiums to appellants. Appellants filed suit. Counts I and V of the complaint allege breach by appellee of the loan commitment agreement; Count II alleges unjust enrichment; Count III alleges a constructive trust; Count VI seeks rescission of the life insurance policy; Count VII seeks rescission of the loan commitment alleging business compulsion. Count IV is directed solely against Lomas & Nettleton Company and is not involved in this appeal. Appellee's motion to dismiss Counts I, II, III, and V was made on the ground that the counts failed to state a claim on which relief could be granted because appellants merely alleged that they had "substantially" complied with the terms and conditions of the loan commitment rather than that they had fully complied with the terms and conditions. No motion to amend the complaint was filed by appellants.

## GENERAL BACKGROUND

The loan commitment was obtained from appellee in 1972 through appellants' agent, Lomas & Nettleton Company, to enable appellants to construct an office building. The loan was to be secured by a mortgage on the completed building. The original loan commitment fee paid by appellant was $13,950.00. The terms and conditions of the loan commitment are set forth in a letter to Lomas & Nettleton Company from appellee dated December 4, 1972, which is attached to the complaint. The terms included a requirement that at the time of closing the construction would be completed and approved by appellee, and tenant leases of at least 13,200 square feet of space in the building would have been executed on terms to be approved by appellee. Various other documents and reports were required to be furnished by appellants prior to the closing. The closing or expiration date was on or before February 8, 1974. The loan commitment was partially amended by a letter from appellee dated December 22, 1972, which is also attached to the complaint. The complaint alleges that the closing date was extended several times upon payment by appellants of an additional fee of $10,462.52.

## COUNT I

In Count I of the complaint appellants allege that all the consideration paid to appellee by appellants was refundable, as well as $1,093.33 in attorneys' fees paid by appellants in connection with the loan transaction. Appellants also allege that they had substantially complied with the terms and conditions of the loan commitment.

The loan commitment letter of December 4, 1972, provided in section 3.1(f) that:

[appellants] shall arrange for the payment of all fees and expenses incurred in connection with this transaction including, but not limited to, the attorney fees (if local counsel is engaged by American National) . . ..

No provision is contained in the documents, attached as exhibits to appellants' complaint, which provides for a refund or return to appellants of the attorneys' fees incurred by appellee.

Section 5.1 of the December 4 letter provided in part that:

If for any reason the closing contemplated by this commitment is not completed on or prior to the expiration date, this commitment shall automatically terminate and be null and void and all obligations of the parties hereto shall cease.

Section 1.1 of the December 4 letter also stated:

In consideration for the processing of the application for a loan and the issuance of this commitment, [appellants] are to pay to American National a fee of $13,950. This fee is to be paid at the time the accepted commitment is delivered to American National.

Section 5.2 provided in part that:

If on or prior to the expiration date, you satisfy the terms and conditions of this commitment and the transaction as outlined herein closes, American National will pay [appellants] a closing fee of $13,-950.

Paragraph VII of Count I of the complaint states in part that:

Subsequent to the initial understanding reached between [appellants] and the [appellee], several modifications of the original agreement were made which consisted primarily of extending the closing date thereof and to increase the stated interest rate . . . on the actual final loan.

. . .

The parties are in agreement that appellants met with various delays in the construction of the building which were not alleged to be caused by appellee. Two extensions of the closing date for the loan were obtained upon payment of the additional fee. The loan commitment expired on October 4, 1974, and it was never funded by appellee.

We concur with the trial court that Count I of the complaint failed to state a cause of action. The complaint and its exhibits disclose that appellee issued a loan commitment to lend appellants money if appellants met certain specified conditions within the time allowed under the commitment. The loan commitment was essentially an option contract. The loan commitment was issued in consideration of payment by appellants of the fee and expenses to be incurred by appellee. If the specified conditions were met by appellants within the time allowable, the loan commitment fee was refundable. Otherwise, the fee was not refundable. There was no provision in the loan commitment for refund of the cost of appellee's legal services.

 Courts have generally treated the terms and conditions of a loan commitment as conditions precedent to the lender's obligation to perform. *Chambers & Co. v. Equitable Life & Assurance Society*, 224 F.2d 338 (5th Cir. 1955); *Frank's Nursery Sales, Inc. v. American National Insurance Co.*, 388 F.Supp. 76 (E.D.Mich.1974); *North Denver Bank v. Bell*, 528 P.2d 413 (Colo. App.1974); *Boston Road Shopping Center v. Teachers Insurance and Annuity Association of America*, 13 A.D.2d 106, 213 N.Y. S.2d 522 (1961). A promise to lend money to another upon the occurrence of certain conditions precedent is an option. *Daily Mines Co. v. Catalina Consolidated Copper Co.*, 59 Ariz. 149, 124 P.2d 320 (1942). The loan commitment fee is paid for the privilege of subsequently borrowing the money if the conditions are met. *Chambers & Co. v. Equitable Life & Assurance Society*, 224 F.2d 338 (5th Cir. 1955); *Goldman v. Connecticut General Life Insurance Co.*, 251 Md. 575, 248 A.2d 154 (1968). Arizona courts require strict compliance by the optionee with the terms of an option. *Oberan v. Western Machinery Co.*, 65 Ariz. 103, 174 P.2d 745 (1946); *University Realty & Development Co. v. Omid-Gaf, Inc.*, 19 Ariz.App. 488, 508 P.2d 747 (1973).

[3, 4] Appellants' complaint alleged "substantial compliance" with the terms of the loan commitment. Appellants argue that the doctrine of substantial performance of the contract is applicable to the loan commitment agreement. While that doctrine has been applied to certain types of contracts, it is not the law in this state for exercise of option contracts. Count I of the complaint, as framed, fails to state a claim on which recovery could be obtained.

## COUNT II

Count II of the complaint incorporates the allegations of Count I and seeks recovery from appellee of the loan commitment fees and the attorneys' fees paid for appellee on the theory of unjust enrichment.

■ To recover on a theory of unjust enrichment, appellants must allege and prove that appellee acquired the money under circumstances which renders appellee's retention of the money inequitable. *Bloomgarden v. Coyer*, 479 F.2d 201, 211 (D.C. Cir. 1973); *Osborn v. Boeing Airplane Co.*, 309 F.2d 99, 102 (9th Cir. 1962). As stated in *Durham Terrace, Inc. v. Hellertown Borough Authority*, 394 Pa. 623, 148 A.2d 899 (1959):

> the quasi-contractual principle of unjust enrichment does not apply to an agreement deliberately entered into by the parties "however harsh the provisions of such contracts may seem in the light of subsequent happenings."

148 A.2d at 904. *See Sachs v. Continental Oil Co.*, 454 F.Supp. 614 (E.D.Pa.1978); 17 C.J.S. *Contracts* § 6, at 573–74. The Arizona Supreme Court has stated:

> where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.

*Brooks v. Valley National Bank*, 113 Ariz. 169, 174, 548 P.2d 1166, 1171 (1976). *See Ashton Company, Inc., Contractors and Engineers v. State*, 9 Ariz.App. 564, 454 P.2d 1004 (1969). The complaint and exhibits reflect that appellants are seeking to recover on a theory of unjust enrichment to relieve themselves of the effects of express provisions of the terms of the loan commitment. The appellants' payments were made in consideration of receiving the loan commitment, but appellants did not fully comply with the terms of the agreement. Under these circumstances, the doctrine of unjust enrichment is not applicable. We hold that the trial court properly granted appellee's motion to dismiss Count II for failure to state a claim.

## COUNT III

Count III of the complaint incorporates the allegations of Count I and seeks to impose a constructive trust of the sums paid by appellants.

■ Courts will impose a constructive trust:

> whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any similar circumstances which render it unconscientious for the holder . . . to retain [it] . . . .

*Eckert v. Miller*, 57 Ariz. 94, 102–03, 111 P.2d 60, 64 (1941) [quoting 3 Pomeroy, *Equity Jurisprudence* § 1053 (3d ed.)].

■ As stated in *Amtitle Trust Co. v. Fitch*, 25 Ariz.App. 182, 184, 541 P.2d 1166, 1168 (1975):

> While the doctrine [of constructive trust], due to its equitable nature, has broad application, it is not an all-purpose remedy which is available when all other remedies fail. A general claim for money damages will not give rise to a constructive trust.
>
> A prerequisite to the imposition of a constructive trust is the identification of a specific property, or res, in which the claimant has an interest.

There is no allegation that the money paid by appellants can be traced to a special fund or to other property. The appellants' claim is essentially one for money damages and will not give rise to a constructive trust.

In *Arm, Inc. v. Terrazas*, 24 Ariz.App. 441, 539 P.2d 915 (1975), the court stated:

A constructive trust is a remedial device created by courts of equity to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. [citation omitted] The gist of the conduct which will lead to the imposition of a constructive trust is the *wrongful holding* of property which unjustly enriches the defendant at the expense of the plaintiff. *Brown v. Walls*, 10 Ariz.App. 168, 457 P.2d 355 (1969).

*Id.* at 442–43, 539 P.2d at 916–17 (emphasis added). As discussed in connection with Count I of the complaint, the complaint and exhibits reveal that appellants' payments were made in consideration of receiving the loan commitment. However, there was no evidence of appellants' full compliance with the terms of the agreement. The appellee was legally within his rights to insist on strict compliance. Consequently, there is no wrongful holding of appellants' funds and a constructive trust cannot be imposed. We hold that Count III fails to state a claim for recovery on a theory of constructive trust.

## COUNT V

■ Count V again incorporates the allegations of Count I of the complaint and seeks money damages from appellee for the alleged breach of the loan commitment. The damages sought in Count V are the difference between the interest payable on the loan commitment from appellee and the interest payable on the loan which appellants subsequently obtained on the property from another financial institution, and the additional mortgage fee imposed by the other financial institution. For the reasons discussed in connection with Count I, we hold that Count V fails to state a claim.

## COUNT VI

Count VI alleges that appellant, Paul J. Johnson, bought a life insurance policy from appellee and paid premiums on it totalling $25,660.80. Appellants allege that the life insurance policy was procured "upon being advised by the agent of [appellee] that the purchasing of such a policy of insurance would assure . . . the ultimate consummation of the loan transaction between the parties." Appellants also allege the premiums were paid upon the express understanding that if the loan was not funded by appellee the premiums would be refunded. Appellants also allege that the premiums were paid because of business and economic compulsions caused by appellee. The allegations were denied by appellee. The trial court granted appellee's motion for summary judgment on Count VI.

The deposition of Paul Johnson revealed that it was his idea to obtain the life insurance policy after the loan commitment was signed because he thought that it would help assure funding of the loan. The loan commitment expired in October of 1974. Appellants paid the life insurance premiums until May of 1975. One of the checks written by Paul Johnson to appellee in the amount of $3,207.60 for life insurance premiums contained a notation that all premiums in connection with the policy would be refunded in the event the loan was not funded.

A.R.S. § 20–449 prohibits giving any rebate of premiums or any advantage, benefit or inducement to anyone for the purchase of life insurance, other than the terms of the life insurance contract itself. The section provides:

Except as otherwise expressly provided by law, no person shall knowingly permit or offer to make or make any contract of life insurance, life annuity or disability insurance, or agreement as to such contract other than as plainly expressed in the contract issued thereon or pay or allow, or give or offer to pay, allow or give, directly or indirectly, as an inducement to such insurance or annuity, any rebate of premiums payable on the contract, or any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the contract.

A.R.S. § 20–448 likewise prohibits giving rebates or advantages in premiums for life insurance. It provides:

A. No person shall make or permit any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contract.

B. No person shall make or permit any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees or rates charged for any policy or contract of disability insurance or in the benefits payable thereunder, or in any of the terms or conditions of the contract, or in any other manner whatever.

C. As to kinds of insurance other than life and disability, no person shall make or permit any unfair discrimination in favor of particular persons, or between insureds or subjects of insurance having substantially like insuring, risk and exposure factors, or expense elements, in the terms or conditions of any insurance contract, or in the rate or amount of premium charged therefor. This subsection shall not apply as to any premium rate in effect pursuant to article 4 of this chapter 2 of this title.

■ Even assuming that the allegations of the complaint are true and that the appellee agreed to refund the life insurance premiums if the loan was funded and agreed that purchase of the insurance policy would assist appellants in obtaining the loan, such agreement would be illegal under A.R.S. §§ 20–448 and 20–449 and unenforceable. *Western Union Life Insurance Co. v. Musgrave*, 25 Ariz. 219, 215 P. 536 (1923); *Jamison v. Southern States Life Insurance Co.*, 3 Ariz.App. 131, 412 P.2d 306 (1966). In *Western Union*, under a similar statute in effect in Arizona in 1923,[1] the Arizona Supreme Court refused to enforce a contract by an insurance company that it would make a loan to the purchaser of a life insurance policy. The court stated:

It is evident that, had the insurance company made the contract with which it is charged, it would have been obnoxious to this statute, and void. It will be noted that the prohibition to enter into such contract is not only imposed upon the insurance company, but that it is also explicitly directed to the other party to such a contract . . . .

The contract for a loan, alleged to have been made by Brice, as agent, was not "expressed in the policy," and assumed to give the assured a "special favor and advantage not specified in the policy," and which the assured, Musgrave, was by this law forbidden to "receive or accept." This special favor which the law forbids, the court is asked to give. The proposition is unsavory. A contract in violation of this and similar laws will not be enforced.

*Id.* at 223, 215 P. at 537.

Appellants also assert in Count VI that the purchase of the life insurance was the result of business and economic compulsion caused by appellee. The Arizona Supreme Court has stated:

The doctrine of "business compulsion" is merely the modern form of the common law doctrine of duress. It must be shown that the person claiming "business compulsion" agreed to an illegal exaction. It is normally used to justify recovery of a voluntary payment made under duress. [citations omitted]

*Colvin v. Superior Equipment Co.*, 96 Ariz. 113, 120–21, 392 P.2d 778, 783 (1964).

Arizona follows the *Restatement* definition of duress. *Lundvall v. Hughes*, 49 Ariz. 264, 65 P.2d 1377 (1937). The *Restatement of Contracts* § 492 defines duress as:

(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or,

(b) any wrongful threat of one person by words or other conduct that induces

---

1. Rev.Stats.Ariz. ¶ 3449.

another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement.

As stated in *Lundvall*, 49 Ariz. at 267, 65 P.2d at 1378:

the threat must be of some act which causes such fear in the person threatened as to preclude him from exercising free will and judgment in entering into the transaction, and that the act threatened must be an unlawful one.

For other cases holding there must be a wrongful act or threat, see *Dunbar v. Dunbar*, 102 Ariz. 352, 429 P.2d 949 (1967), and *Kincheloe v. Pima County*, 114 Ariz. 145, 559 P.2d 701 (App.1977).

As noted above, the deposition of Paul Johnson indicates it was his idea to purchase the life insurance policy from appellee after the loan commitment had already been issued. The transcript of Paul Johnson's deposition reflects:

Q: Well, was it your thought that if you obtained the insurance that the insurance company would fund the loan even if you didn't meet its requirements?

A: I really hadn't thought that I wouldn't be able to meet the requirements. Of course, I didn't know at that time that they were going to make the requirements more stiff than they were.

Q: But they were already committed to you in writing that they would give you—make the loan under certain specified conditions.

A: This was true. This was just an ace in the hole.

Q: You mean that this was some kind of additional guarantee to you?

A: As far as I was concerned, this was just an extra to make sure I didn't have to worry about that end of it, that would be taken care of.

There was no evidence before the trial court that appellee required or even suggested the purchase of the life insurance policy as a condition of making the loan commitment. Paul Johnson testified in his deposition that appellee's agent stated that purchase of the life insurance would assure funding of the loan commitment and that the premiums would be refunded if it was not funded. Although the agreement, if any was made, to fund the loan or refund the life insurance premiums paid would be illegal, there is no evidence by deposition or affidavit which would establish any duress by appellee in connection with the purchase by Paul Johnson of life insurance. The trial court properly granted summary judgment in favor of appellee on Count VI.

## COUNT VII

Summary judgment was also granted on Count VII which alleges that the payments made under the loan commitment were the result of business or economic compulsion caused by appellee and must be refunded. The elements and principles to be applied in claims of business or economic compulsion have been set forth above. The refusal of a prospective lender to lend money until he obtains security satisfactory to him cannot be called legal duress. *Potter v. Home Owners' Loan Corp.*, 50 Ariz. 285, 72 P.2d 429 (1937). Similarly, the refusal of appellee to fund the loan until full and timely compliance with all the terms and conditions of the loan commitment cannot amount to legal duress because appellee had a legal right to insist upon strict compliance with the terms agreed upon.

For the reasons set forth above, we affirm the orders and judgment of the trial court.

EUBANK, P. J., and HAIRE, J., concur.