138 P.3d 1210

**GRUBB & ELLIS MANAGEMENT SER-VICES, INC., a Delaware corporation, Cross–Claimant/Counter–Cross–Defendant/Appellee,**

v.

**407417 B.C., L.L.C., an Arizona limited liability company, Cross–Defendant/Counter–Cross–Claimant/Appellant.**

No. 1 CA–CV 05–0316.

Court of Appeals of Arizona, Division 1, Department E.

July 27, 2006.

Review Denied Jan. 9, 2007.

Sacks Tierney P.A. By Mark D. Dillon, Scottsdale, Attorneys for Appellee.

Robert S. Porter, Phoenix, Attorney for Appellant.

## OPINION

HALL, Judge.

¶ 1 This appeal arises from a dispute between 407417 B.C., L.L.C. (Landlord) and its real estate agent Grubb & Ellis Management Services, Inc. (Grubb & Ellis), co-defendants in a lawsuit filed by a lessee of Landlord's commercial property. Landlord and Grubb & Ellis filed cross-claims for indemnification against one another. The trial court granted Grubb & Ellis's claim but denied Landlord's claim. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Landlord is an Arizona company that owns a one-story office building in Phoenix that it leases to several tenants. Grubb & Ellis is a licensed real estate corporation that has managed Landlord's Phoenix property since 1998 pursuant to the parties' Commercial Property Management Agreement (the Management Agreement) by performing such services as operating, maintaining, servicing, improving, and leasing the premises.

¶ 3 Sometime in March 2001, Rafaela Gutierrez began negotiating an agreement with Grubb & Ellis's real estate sales agent, Matthew Dubasik (Dubasik) to lease part of the Landlord's building for use as a commercial childcare center. Gutierrez inquired whether the premises had sufficient parking. Dubasik informed Gutierrez that she could use an adjacent dirt lot located south of the premises for parking and for a playground area because it was also owned by Landlord. By the end of March 2001, Gutierrez and Landlord signed a lease agreement (the Lease) prepared by Dubasik. Section 2.6.1 of the Lease obligated Landlord to provide

Gutierrez "the parking facilities required by applicable law."

¶4 After the Lease was signed, Gutierrez was not able to obtain a certificate of occupancy from the City of Phoenix necessary for commercial operation of the premises because the premises did not have adequate paved parking; only thirty-three of the required forty-seven parking spaces were paved.[1] Gutierrez informed Dubasik of this problem sometime in the summer of 2001 and claimed that he had assured her that Landlord was taking responsibility for paving the south lot to bring the premises into compliance with the City's requirements. Landlord, however, denied authorizing Grubb & Ellis to incur any expenses associated with improvements or remodeling of the premises for tenant's use. Gutierrez filed a complaint against Landlord, Grubb & Ellis, and Dubasik alleging claims for breach of express warranty, breach of contract, unjust enrichment, professional negligence, negligent misrepresentation, and fraudulent inducement.

¶5 Grubb & Ellis cross-claimed against Landlord alleging that Landlord was contractually obligated to indemnify Grubb & Ellis and its employee, Dubasik, and hold them harmless pursuant to the indemnity agreement in section 3.4 of the Management Agreement, which provides:

3.4 *Indemnity.* Except for [Grubb & Ellis's] gross negligence or willful misconduct, [Landlord] agrees to indemnify and save [Grubb & Ellis] and its employees, officers or directors, completely harmless in respect to any action, cause of action, suit, debt, cost, expense, claim, or demand whatsoever brought by any third person whomsoever, at law or in equity, in connection with the Property or the performance by [Grubb & Ellis] of any and all of its obligations under this Agreement, including without limitation, any damage or injury whatsoever to any employee or other persons or property arising out of the use, administration or control of the Property or any other assets of [Landlord] during the term of this Agreement. It shall be

the responsibility of [Grubb & Ellis] to comply with all applicable state or federal labor laws.

Landlord filed a counter-cross-claim against Grubb & Ellis and Dubasik alleging that they had failed to perform their obligations under the Management Agreement by misrepresenting to Gutierrez the availability of parking and that, as a matter of common-law indemnity, Landlord was entitled to reimbursement for all of its litigation expenses as well as any judgment awarded Gutierrez for which it may be liable.

¶6 Subsequently, Grubb & Ellis and Dubasik were dismissed from Gutierrez's lawsuit so that the only issue at trial pertained to Landlord's liability. Specifically, the jury was asked to decide whether Landlord "breached a material term of the Lease Agreement by not providing [Gutierrez] with the parking spaces required by applicable law to enable [Gutierrez] to obtain a certificate of occupancy" and/or whether Landlord "breached the duty of good faith and fair dealing" implied in every contract. The jury rendered a verdict in favor of Gutierrez finding that Landlord had breached its contract with Gutierrez and that she sustained damages in the amount of $180,000.00. The trial court awarded Gutierrez attorneys' fees in the amount of $41,600.00 and costs totaling $4,357.24.

¶7 Following the trial of Gutierrez's claims, pursuant to the parties' pretrial stipulation, Landlord and Grubb & Ellis submitted briefs on their respective indemnification claims for the trial court's resolution. The trial court denied Landlord's claim for common-law indemnification from Grubb & Ellis for the judgment and attorneys' fees and costs awarded Gutierrez and for Landlord's own attorneys' fees and costs. However, it granted Grubb & Ellis's claim for contractual indemnification from Landlord for attorneys' fees and costs incurred by Grubb & Ellis in defending against Gutierrez's claims. Landlord timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes

---

1. Before it could be used as a childcare center, the premises had to be reclassified from "B" occupancy to "E" occupancy, which required bringing the premises into conformity with the City of Phoenix's existing building code.

(A.R.S.) sections 12–120.21(A)(3) and –2101(B) (2003).

## DISCUSSION

¶ 8 Landlord raises two issues on appeal: (1) whether the trial court erred when it required Landlord to indemnify Grubb & Ellis pursuant to the parties' express indemnity agreement; and (2) whether the trial court erred when it denied Landlord's claim for implied indemnification from Grubb & Ellis.

### I.

¶ 9 Landlord offers three rationales in support of its claim that the trial court erred when it construed section 3.4 of the parties' Management Agreement as requiring Landlord to contractually indemnify Grubb & Ellis.

¶ 10 First, Landlord contends that despite the indemnity provision in the parties' Management Agreement, public policy prohibits Grubb & Ellis from seeking indemnity from Landlord for its professional negligence. This argument is not supported by Arizona case law, which permits a party to protect itself contractually by shifting liability for its faults to another via the mechanism of indemnity. *See, e.g., Wash. Elem. Sch. Dist. No. 6 v. Baglino Corp.,* 169 Ariz. 58, 61, 817 P.2d 3, 6 (1991) (stating that "contracts indemnifying a party against his own negligence do not violate public policy").[2]

¶ 11 Second, Landlord argues that the indemnity provision in the parties' Management Agreement was not intended to indemnify Grubb & Ellis for its negligence. Rather, according to Landlord, the purpose of the provision was to indemnify Grubb & Ellis for "normal premises" liability.

¶ 12 Interpretation of a contract is a question of law that we review de novo. *Thomas v. Liberty Mut. Ins. Co.,* 173 Ariz. 322, 324, 842 P.2d 1335, 1337 (App.1992). A general principle of contract law is that when parties bind themselves by a lawful contract the terms of which are clear and unambiguous, a court must give effect to the contract as written. *Estes Co. v. Aztec Constr., Inc.,* 139 Ariz. 166, 168, 677 P.2d 939, 941 (App. 1983); *see also INA Ins. Co. v. Valley Forge Ins. Co.,* 150 Ariz. 248, 252, 722 P.2d 975, 979 (App.1986) ("When there is an express indemnity contract, the extent of the duty to indemnify must be determined from the contract[.]"). Furthermore, indemnity provisions "are strictly construed and generally will not protect an indemnitee against its own negligence unless the indemnitor's obligation to do so is expressed in clear and unequivocal terms." *Baglino,* 169 Ariz. at 61, 817 P.2d at 6.

¶ 13 A contract clause that does not specifically address what effect the indemnitee's negligence has on the indemnitor's obligation to indemnify is referred to as a "general" indemnity agreement. *Pioneer Roofing Co. v. Mardian Constr. Co.,* 152 Ariz. 455, 474, 733 P.2d 652, 671 (App.1986). Under such an agreement, an indemnitee is usually "entitled to indemnification for a loss resulting in part from an indemnitee's passive negligence, but not active negligence."[3]

---

2. Landlord relies in part on cases wherein courts invalidated exculpatory clauses for policy reasons. *See, e.g., Tunkl v. Regents of Univ. of Cal.,* 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441, 447 (1963). This reliance is misplaced because an exculpatory provision, that is, a provision that "deprives one of the contracting parties of [the] right to recover," is distinguishable from an indemnity contract, which "simply effects a change in the person who ultimately has to pay for the damages." K.A. Drechsler, *Validity of Contractual Provision by One Other Than Carrier or Employer for Exemption from Liability, or Indemnification, for Consequences of Own Negligence,* 175 A.L.R. 8, 21 (1948). As noted in *Tunkl,* "[w]hile obviously no public policy opposes private, voluntary transactions in which one party, for a

consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party, the above circumstances [an exculpatory clause] *pose a different situation.*" 32 Cal.Rptr. 33, 383 P.2d at 446.

3. The distinction between active and passive negligence is explained in *Estes:*

Generally, active negligence is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform. On the other hand, passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition,

*Id.* (emphasis omitted). For example, an agreement to "indemnify and hold [indemnitee] harmless of and from any and all liability incurred by it for any reason whatsoever" has been construed as a general indemnity clause that does not protect an indemnitee against its own active negligence notwithstanding the agreement's broad language. *Royal Props., Inc. v. Ariz. Title Ins. & Trust,* 13 Ariz.App. 376, 378, 476 P.2d 897, 899 (1970); *see also* 41 Am.Jur.2d *Indemnity* § 18 (2000) ("[M]ere general, broad, and seemingly all-inclusive language is not sufficient to impose liability for an indemnitee's own negligence."). Similarly, an agreement to "protect and indemnify [an indemnitee] from any claims, liability, or losses suffered by anyone wholly or partially through the negligence of [indemnitor]" has been construed as a general indemnity clause because it does not address the effect of the indemnitee's negligence on the indemnitor's obligation to indemnify. *Estes,* 139 Ariz. at 167–68, 677 P.2d at 940–41.

▮ ¶ 14 In contrast, a "specific" indemnity agreement addresses what effect the indemnitee's negligence has on the indemnitor's obligation to indemnify and specifically imposes upon indemnitor an obligation to indemnify for any type of damage, even though also caused by the negligence of indemnitee. *Baglino,* 169 Ariz. at 62, 817 P.2d at 7. For example, in *Baglino,* a provision that entitled an indemnitee to indemnification "regardless of whether or not [the injury] is caused in whole or part by any negligent act or omission of the [indemnitee]" was found to be a specific agreement because it clearly protected the indemnitee from the conse-

quences of its own negligence. *Id.* at 61–62, 817 P.2d at 6–7.

▮ ¶ 15 Landlord construes section 3.4 as a general indemnity clause limited to normal premises liability and contends that it does not demonstrate that the parties had a "clear and unequivocal" agreement to indemnify Grubb & Ellis for its negligent acts. *See INA Ins. Co.,* 150 Ariz. at 255, 722 P.2d at 982 ("The burden is on the party seeking indemnity to prove he is entitled to it."). In support of this construction, Landlord contends that there are "fundamental differences" between the indemnification agreement in *Baglino* and section 3.4 because the latter does not refer to the term "negligence" or specifically require Landlord to indemnify Grubb & Ellis for liability "caused" by Grubb & Ellis's own actions. Landlord further contends that the exclusion of gross negligence in the indemnity provision does not indicate an intent to indemnify Grubb & Ellis for its negligence but merely states a "legal conclusion that gross negligence will never be the subject of indemnification." [4]

¶ 16 Grubb & Ellis, however, construes section 3.4 as a specific indemnity clause triggering Landlord's indemnification obligation even in case of its own negligence. In making this argument, it points to two specific parts of the indemnity clause. First, it relies on the portion of the clause that entitles it to be indemnified for "any ... claim ... whatsoever brought by any third person whomsoever ... in connection with the Property *or the performance by [Grubb & Ellis] of any and all of its obligations under this Agreement* [.]" (Emphasis added.) Second, it contends that because the only exception

---

perform a duty imposed by law, or take adequate precautions against certain hazards inherent in employment. 139 Ariz. at 169, 677 P.2d at 942 (citing *Busy Bee Buffet v. Ferrell,* 82 Ariz. 192, 310 P.2d 817 (1957) and other cases).

4. Additionally, Landlord relies on an affidavit of Robert Knight, the president of the company that was acquired by Grubb & Ellis, who originally drafted and entered the Management Agreement with Landlord. Knight states that he only "intended that [section 3.4] appl[y] to the typical claims property managers experience, namely claims brought by vendors or tenant's employees for incidences [sic] occurring on the premises such as car accidents or slips and falls," and that "[t]here was no intent on [his] part, and no discussion with [Landlord] to the effect that the property manager expected or intended that the owner indemnify the property manager for claims, where the owner is sued because of the property manager actions as a leasing agent." The trial court, however, rejected Knight's affidavit on the basis that section 3.4's language was not "reasonably susceptible" to the interpretation suggested by Knight. *See Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 153–55, 854 P.2d 1134, 1139–41 (1993). We find no error in that ruling.

from this indemnity obligation is made for Grubb & Ellis's "gross negligence or wilful misconduct," the parties "obviously intended that all other types of negligence would be covered."

¶ 17 "The extent of a contractual duty to indemnify must be determined from the contract itself." *Superior Cos. v. Kaiser Cement Corp.*, 152 Ariz. 575, 577, 733 P.2d 1158, 1160 (App.1986) (citations omitted). We construe contracts to cover losses or liabilities that reasonably appear to have been intended by the parties. *Id.* Among Grubb & Ellis's "obligations" under the Management Agreement were obligations to "handl[e] all tenant requests and negotiations" (section 2.4), to "use its best efforts to lease vacant space," and to conduct "all negotiations connected therewith" (section 2.9). Thus, even assuming that Grubb & Ellis performed its obligations negligently when dealing with the parking problem, the language of section 3.4 indemnifying Grubb & Ellis for claims "in connection … with … the performance by [Grubb & Ellis] … of any and all of its obligations" supports its construction as a "specific" indemnity provision. Even though this portion of the indemnity agreement does not use the word "negligence" in extending protection to Grubb & Ellis from the consequences of not performing its obligations under the Management Agreement, the supreme court in *Baglino* rejected a mechanistic approach, commenting there is "no requirement that the term negligence actually be used, or that specific reference be made to liability arising out of the indemnitee's negligence." 169 Ariz. at 61, 817 P.2d at 6; *see also* Restatement (Third) of Torts: Apportionment of Liability § 22 cmt. f (2000) ("An indemnitee can recover contractual indemnity for his or her own legally culpable conduct only if the contract is clear on that point. If the contract is otherwise clear, it need not contain specific words, such as 'negligence' or 'fault.'").

¶ 18 Our construction that the indemnity agreement protects Grubb & Ellis from its own negligence is further strengthened by the language at the beginning of the section that excepts Landlord from indemnifying Grubb & Ellis for its "gross negligence or willful misconduct." We are unpersuaded by Landlord's attempt to treat this exception as some sort of legal conclusion incorporated into the parties' contract rather than an expression of the parties' intent. *See Norman v. Recreation Ctrs. of Sun City, Inc.*, 156 Ariz. 425, 427–28, 752 P.2d 514, 516–17 (App. 1988) (stating rule that contracts are construed to give effect to all of its provisions). Instead, by limiting Landlord's obligation to indemnify Grubb & Ellis to only those incidents not involving Grubb & Ellis's "gross negligence and willful misconduct," the parties impliedly agreed that Landlord would indemnify Grubb & Ellis for its ordinary negligence. *See, e.g., McNally & Nimergood v. Neumann–Kiewit Constr., Inc.*, 648 N.W.2d 564, 572–73 (Iowa 2002) (construing an indemnity agreement excluding indemnification for "damage[s] caused by defects in the equipment" as expressing a clear intent to include indemnification for indemnitee's own negligence unless it is attributable to a defect in the equipment). In sum, the clear import of the language of section 3.4, construed in its entirety, is to provide indemnity coverage to Grubb & Ellis notwithstanding its negligence.

¶ 19 As the premise to its final argument, Landlord claims that the "gross negligence and willful misconduct" exception in section 3.4 placed the burden on Grubb & Ellis to disprove such conduct. Landlord then asserts that Grubb & Ellis failed to establish that it was not grossly negligent in performance of its professional obligations and that Landlord should, therefore, be relieved from its indemnification obligation.

¶ 20 Although Landlord is generally correct that the party seeking to be indemnified has the burden of proof on the issue, *see INA Ins. Co.*, 150 Ariz. at 255, 722 P.2d at 982, Landlord's contention that Grubb & Ellis was grossly negligent is in the nature of an affirmative defense. *See Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 126 (Tex.Ct.App.2002) (commenting that indemnitor's assertion that indemnitee's claim was precluded because of contractual exclusion for gross negligence and willful misconduct was an affirmative

defense); *see also Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46, ¶ 13, 13 P.3d 785, 788 (App.2000) (stating that "the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion").

¶ 21 The proponent of an affirmative defense has the burden of pleading and proving it. Ariz. R. Civ. P. 8(c), 12(h); *Double AA Builders, Ltd. v. Grand State Constr., LLC*, 210 Ariz. 503, 510, ¶ 34, 114 P.3d 835, 842 (App.2005); *see also Wieman v. Roysden*, 166 Ariz. 281, 286, 802 P.2d 432, 437 (App. 1990) (noting an affirmative defense not specifically pled is waived); *City of Phoenix v. Linsenmeyer*, 86 Ariz. 328, 333, 346 P.2d 140, 143 (1959) ("Affirmative defenses are required to be pleaded to prevent surprise."). Thus, the trial court correctly declined to address Landlord's gross-negligence argument because, as it explained, "Landlord has never asserted any claim of gross negligence against Grubb & Ellis, despite knowing that Grubb & Ellis was seeking indemnification under Paragraph 3.4." [5]

¶ 22 In summary, we find that section 3.4 of the parties' Management Agreement clearly and unequivocally sets forth Landlord's obligation to indemnify Grubb & Ellis for its negligent management of the premises. Therefore, the trial court did not err when it ordered Landlord to indemnify Grubb & Ellis and hold it harmless from Gutierrez's claims, including payment of Grubb & Ellis's attorneys' fees and costs. *See INA Ins. Co.*, 150 Ariz. at 255, 722 P.2d at 982.

## II.

¶ 23 The second issue is whether the trial court erred by refusing to grant Landlord's claim for indemnity. In the trial court,

Landlord argued that Grubb & Ellis breached an implied contractual promise to render competent service, *Barmat v. John & Jane Doe Partners A–D*, 155 Ariz. 519, 521, 747 P.2d 1218, 1220 (1987), and that Grubb & Ellis breached a fiduciary duty owed it, *Lombardo v. Albu*, 199 Ariz. 97, 99–101, 14 P.3d 288, 290–92 (2000), therefore entitling it to indemnity under common-law indemnity principles. Landlord also relied on *First National Bank of Arizona v. Otis Elevator Co.*, 2 Ariz.App. 596, 597, 411 P.2d 34, 35 (1966), pursuant to which an obligation to indemnify "may grow out of an implied contractual relation or out of a liability imposed by law." On appeal, Landlord argues that it has been "exposed to liability directly because Grubb & Ellis failed miserably" and "caused it to incur liability by negligently preparing the lease and negligently misrepresenting parking."

¶ 24 We construe Landlord's arguments as raising a claim for implied contractual indemnity [6] and a claim for indemnity implied by operation of law.[7] Landlord's recovery on the basis of either of these two theories, however, is precluded. Landlord may not recover on the basis of implied indemnity principles because the parties expressly agreed upon an indemnity provision in their contract. *See INA Ins. Co.*, 150 Ariz. at 252, 722 P.2d at 979 ("Recovery under a contract providing for indemnity obviates any right to recover under the common law theory of implied indemnity since by such an express contract the parties have already themselves determined how and under what circumstances losses shall be allocated."); *cf. Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 542, ¶ 34, 48 P.3d 485, 492 (App.2002) (stating that the doctrine of unjust enrichment is inapplicable

5. Landlord raised the issue of Grubb & Ellis's gross negligence in the trial court for the first time in its post-evidence closing brief.

6. Under the theory of implied contractual indemnity, courts generally allow an agent to recover from a principal when it, through no wrongdoing of its own, incurs liability for an act performed on behalf of the principal. *See INA Ins. Co.*, 150 Ariz. at 252, 722 P.2d at 979; *Cella Barr Assocs.*

*v. Cohen*, 177 Ariz. 480, 486–87, 868 P.2d 1063, 1069–70 (App.1994).

7. Under the theory of indemnity by operation of law, courts allow one of the joint tortfeasors, whose liability is only secondary, or based on passive negligence, to recover from the other whose liability is primary, or based on active negligence. *See Busy Bee Buffet*, 82 Ariz. at 198, 310 P.2d at 821.

when a specific contract governs the relationship of the parties).

### III.

¶ 25 Both parties have requested an award of attorneys' fees on appeal pursuant to A.R.S. § 12–341.01 (2003), allowing for an award of reasonable attorneys' fees to the successful party in an action arising out of a contract. Grubb & Ellis has also requested an award of attorneys' fees incurred in defending this appeal pursuant to section 5.3 of the parties' Management Agreement:

> In the event [Grubb & Ellis] or [Landlord] shall institute legal proceedings against the other arising out of the term of this Agreement or the performance thereunder, the prevailing party shall recover from the other party all reasonable attorneys' fees . . . incurred in any such action.

¶ 26 Because Landlord has not prevailed on appeal, we deny its request. As the prevailing party on appeal, Grubb & Ellis is entitled to recover its reasonable attorneys' fees pursuant to section 5.3. *See Lisa v.*

*Strom,* 183 Ariz. 415, 418 n. 2, 904 P.2d 1239, 1242 n. 2 (App.1995) ("[W]hen a contract has an attorney's fees provision it controls to the exclusion of the statute."). Therefore, we award Grubb & Ellis its reasonable attorneys' fees incurred on appeal upon its compliance with Arizona Rule of Civil Appellate Procedure 21(c). As the successful party, Grubb & Ellis is also entitled to recover its taxable costs on appeal. *See* A.R.S. § 12–342(A) (2003).

### CONCLUSION

¶ 27 For the foregoing reasons, we affirm.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and SUSAN A. EHRLICH, Judge.