NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CHARLES SULLIVAN, an unmarried man,
*Plaintiff/Counterdefendant/Appellant*,

*v.*

HOMES ETC . . . , LLC, an Arizona limited liability company,
*Defendant/Counterclaimant/Appellee*,

J&T PROPERTIES, LLC, an Arizona limited liability company;
ROSEMARIE FERNANDEZ, a widowed woman, *Defendants/Appellees*.

No. 1 CA-CV 13-0424
FILED 07-15-2014

---

Appeal from the Superior Court in Maricopa County
No.  CV2011-050275
The Honorable Alfred M. Fenzel, Judge

**AFFIRMED**

---

COUNSEL

Barski Drake PLC, Scottsdale
By Chris D. Barski
*Counsel for Plaintiff/Counterdefendant/Appellant*

Thomas N. Swift II, PC, Mesa
By Thomas N. Swift
*Counsel for Defendants/Counterclaimants/Appellees*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Margaret H. Downie joined.

---

**K E S S L E R**, Judge:

¶1        Charles Sullivan appeals the superior court's judgment in favor of Homes Etc. for his breach of an option agreement. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Homes Etc. owns rental property which is managed by J&T Properties, LLC ("the Rental Agent"). Rosemarie Fernandez is the manager of Homes Etc., and is the sole member of both Homes Etc. and the Rental Agent.

¶3        In 2010, Sullivan entered into a short term lease for a single family home ("the Property") with the Rental Agent. Sullivan then approached Fernandez about leasing the Property for a longer term and expressed an interest in purchasing the Property. Fernandez had already committed to a two-year lease with other tenants, but was willing to rent to Sullivan if he might purchase the Property. In April 2010, Sullivan and the Rental Agent executed a form rental agreement for one year, and Sullivan and Homes Etc., as owner of the Property, executed an option to purchase agreement ("the Agreement").

¶4        The Agreement provided that upon payment of $2000 per month during the one-year option term, Homes Etc. would grant Sullivan the option to purchase the Property for a designated price. At Homes Etc.'s request, a provision was inserted requiring Sullivan to be current with the monthly rental payments to exercise the option to purchase. The Agreement did not provide it would terminate if the lease was terminated. Rather, it provided the option period would terminate upon the earlier of the stated date for termination (May 1, 2011), closing of the purchase, or a mutual written agreement by the parties to terminate the option. The Agreement also provided that it was a "binding contract" and that there were no other oral promises, conditions, or representations. Fernandez

2

then notified the prospective tenants of the decision to rent to Sullivan and returned their deposit.

¶5 In January 2011, approximately eight months into the lease, Fernandez obtained a judgment for unlawful detainer in justice court based upon Sullivan violating the lease by subletting the Property. Sullivan filed a complaint in superior court alleging the unlawful detainer action was a substantial and material breach of the lease. Homes Etc., the Rental Agent, and Fernandez answered and filed a counterclaim alleging Sullivan: (1) breached the lease by subletting the Property, and (2) breached the Agreement by failing to make the $2000 option premium payments. The matter was sent to court-mandated arbitration. The arbitrator held Sullivan's claim was barred by collateral estoppel, and awarded Homes Etc. $24,000 for the unpaid option premiums. Sullivan appealed, and after a one-day bench trial, the superior court found in favor of Homes Etc. on all claims and awarded Homes Etc. $39,587.34, including the principal on the option premium payments, pre-judgment interest, costs, and reasonable attorneys' fees.

¶6 Sullivan timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (Supp. 2013).

## DISCUSSION

¶7 On appeal, Sullivan argues: (1) the Agreement was revocable for lack of consideration; and (2) the appropriate remedy was rescission and, as a result, Homes Etc. was not entitled to actual damages.

¶8 Contract interpretation is a question of law which we review *de novo*. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9, 218 P.3d 1045, 1050 (App. 2009). The purpose of contract interpretation is to determine and enforce the parties' intent. *Id.*; *see also Goodman v. Newzona Inv. Co.*, 101 Ariz. 470, 472, 421 P.2d 318, 320 (1966) ("The intent of the parties . . . must control the interpretation of a contract. It is not within the province or power of the court to alter, revise, modify, extend, rewrite or remake an agreement."). "A general principle of contract law is that when parties bind themselves by a lawful contract the terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 86, ¶ 12, 138 P.3d 1210, 1213 (App. 2006). To determine intent, we "will look to the plain meaning of the words as viewed in the context of the contract as a whole." *United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 259, 681 P.2d 390, 411 (App. 1983). We review an award of damages for abuse of

discretion. *Gonzales v. Ariz. Pub. Serv. Co.*, 161 Ariz. 84, 90, 775 P.2d 1148, 1154 (App. 1989).

I.      CONSIDERATION

**¶9**      Sullivan argues the Agreement is unenforceable for lack of consideration because payment of the option premiums was a condition precedent to making the offer irrevocable.   We disagree.

**¶10**      "An option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer."  Restatement (Second) of Contracts § 25 (1981); *see McLamb v. T.P. Inc.*, 619 S.E.2d 577, 580 (N.C. App. 2005) ("[A]n 'option' [contract] is a contract by which the owner agrees to give another the exclusive right to buy property at a fixed price within a specified time." (internal quotation marks and citation omitted)).   "An option contract has two elements: 1) the underlying contract which is not binding until accepted; and 2) the agreement to hold open to the optionee the opportunity to accept." *Plantation Key Developers, Inc. v. Colonial Mortg. Co.*, 589 F.2d 164, 168 (5th Cir. 1979).  Here, the option contract was composed of: (1) the underlying option to purchase the Property if Sullivan later decided to exercise the option to buy, and (2) the offer to hold the option open for a year-long term.  The only issue before us is whether the offer to hold open was a binding agreement.

**¶11**      Sullivan drafted the Agreement and presented the offer to Fernandez.  The Agreement provided Sullivan would pay $2000 per month during the option term in exchange for the option to purchase the Property for a designated price.  Both parties acknowledge Sullivan never made any of the option premium payments.  We must therefore decide whether the Agreement is enforceable without actual payment of the premiums.

**¶12**      "The validity of an option contract is determined by ordinary contract rules," *Stanwood v. Welch*, 922 F. Supp. 635, 640 (D. D.C. 1995), and both the underlying contract and the agreement must be supported by consideration, *Plantation Key Developers*, 589 F.2d at 168; *see K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (App. 1983) ("For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained.").  In Arizona, "[e]very contract in writing imports a consideration."  A.R.S. § 44-121 (2013).  "Failure of consideration is an affirmative defense and the burden

is upon one who pleads it to establish such defense by a preponderance of the evidence." *Chernov v. Sandell*, 68 Ariz. 327, 334, 206 P.2d 348, 352 (1949); *see* Ariz. R. Civ. P. 8(c). "It is also a general rule that a promise for a promise is adequate consideration." *Lessner Dental Labs., Inc. v. Kidney*, 16 Ariz. App. 159, 160, 492 P.2d 39, 40 (1971); *see also K-Line Builders*, 139 Ariz. at 212, 677 P.2d at 1320 ("Consideration is a benefit to the promisor or a loss or detriment to the promisee . . . .").

¶13    The express terms of the Agreement refute Sullivan's argument that the Agreement was not enforceable on the theory that payment of the option premiums was a condition precedent to the formation of a contract. His promise to be bound is adequate consideration, and his obligation to make payments is stated in clear positive language: "Optionee hereby agrees to obtain from Owner, the exclusive option to acquire the [Property] . . . on the terms and conditions set forth herein" with the initial payment of the option price due upon execution of the Agreement and monthly installments to be made thereafter. The Agreement also expressly provides that it was a binding contract and there were no oral promises or conditions not contained in the written Agreement itself. Furthermore, the Agreement also states that the option commencement date is May 1, 2010, not the date of the initial option premium payment, and the first payment was due upon execution of the Agreement.

¶14    In addition, the court found evidence of consideration through parol evidence that Fernandez changed her position on a longer lease to other parties in exchange for Sullivan's option to purchase the Property. "The parol evidence rule, as traditionally stated, renders inadmissible any evidence of prior or contemporaneous oral understandings and of prior written understandings, which would contradict, vary or add to a written contract which was intended as the final and complete statement or integration of the parties' agreement." *Pinnacle Peak Developers v. TRW Inv. Corp.*, 129 Ariz. 385, 389, 631 P.2d 540, 544 (App. 1980) (internal quotation marks and citation omitted). The rule does not, however, prevent the admission of evidence of the true consideration for a contract. *See State ex rel. Herman v. Wilson*, 103 Ariz. 194, 198, 438 P.2d 760, 764 (1968). Thus, the parol evidence rule is not violated when the evidence offered does not vary or contradict the meaning of an agreement, but is instead offered to explain what the parties truly intended. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154, 854 P.2d 1134, 1140 (1993). The evidence Fernandez changed her position as to other tenants was properly considered. In any event, Sullivan waived the parol evidence rule by failing to object to the

allegedly improper testimony below. *See Cedic Dev. Corp. v. Sibole*, 25 Ariz. App. 185, 187-88, 541 P.2d 1169, 1171-72 (1975) ("[A]lthough counsel showed an awareness of the applicability of the parol evidence rule, no intention was demonstrated by these comments that the court consider a formal, specific objection to have been made. Therefore, the court was entitled to consider parol evidence in reaching its decision, and when considered, it supplies a sufficient foundation for the trial court's decision.").

¶15        Fernandez was originally unwilling to renew Sullivan's lease for a longer term because she had already committed to a two-year lease with other tenants. Fernandez only reconsidered when Sullivan expressed an interest in purchasing the Property and claimed he would pay $2000 a month for the option to do so. Based on Sullivan's representations, Fernandez contacted the tenants, obtained permission to cancel the proposed lease so she could rent to Sullivan as a prospective buyer, and returned their deposit. But for the promise to enter into the option contract, Fernandez would not have canceled the arrangement with the prospective tenants and entered into the lease with Sullivan. Therefore, in addition to the promise to pay, we find this agreement to be part of the true consideration.

¶16        Furthermore, at oral argument before this Court, Sullivan argued that although he was not bound under the Agreement to tender payment, if he chose to make a payment, Fernandez was bound to accept it. However, if Fernandez was obligated to accept the first $2000 option premium payment, the intent must be for both parties to be bound. Simply put, Sullivan's argument confuses the two aspects of the Agreement. Although Sullivan could unilaterally decide whether to exercise the option and purchase the Property at the end of the option term, he could not unilaterally decide not to pay the monthly option premiums without breaching the Agreement. For Fernandez to be bound to accept the $2000 payments if made, there had to be a mutual obligation on the part of Sullivan. That obligation was to make the payments. This conclusion is consistent with the terms of the Agreement, which did not provide that the contract would terminate upon Sullivan's failure to pay the option premium payments and expressly provided that the Agreement was binding. Based on the record, Sullivan made a binding promise to have the offer kept open and that offer was supported by consideration. The Agreement is therefore enforceable.

II.    DAMAGES

**¶17**        Sullivan claims the appropriate remedy for Homes Etc. was to rescind the Agreement.  In addition, he argues Homes Etc. was not entitled to actual damages absent a showing of property depreciation and forbearance in reliance on the option premium payments.   We disagree.

**¶18**        "Upon the breach of a contract, the party seeking relief has the choice of three remedies: rescind the contract, refuse to treat the breach as a termination of the contract and request that the court compel performance under the contract, or consider the breach to be a termination of the contract and request damages resulting from the breach." *W. Pinal Family Health Ctr., Inc. v. McBryde*, 162 Ariz. 546, 548, 785 P.2d 66, 68 (App. 1989).  Although Sullivan would have preferred for Homes Etc. to select rescission over termination and damages as its remedy, the choice of remedy ultimately belongs to Homes Etc.  *See id.* at 550, 785 P.2d at 70 (finding untenable the notion that breaching parties are entitled to select the remedies injured parties may pursue).  Accordingly, Homes Etc. was well within its rights to consider the breach a termination of the contract and to pursue any damages.

**¶19**        "Arizona has long held that damages for breach of contract are those damages which arise naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered the contract." *All Am. Sch. Supply Co. v. Slavens*, 125 Ariz. 231, 233, 609 P.2d 46, 48 (1980).  "The purpose of money damages is to put the injured party in as good a condition as that in which full performance would have put him." *Fairway Builders, Inc. v. Malouf Towers Rental Co.*, 124 Ariz. 242, 254, 603 P.2d 513, 524 (App. 1979) (quoting Restatement (Second) of Contracts § 346(1) cmt. b (1932)).  Sullivan promised to pay $2000 per month for one year in exchange for an exclusive option to purchase the Property for a designated price, and the contract was enforceable for the reasons stated above.  Pursuant to the Agreement, if Sullivan remained current on his monthly rental payments and paid the option premiums, he could have enforced the Agreement at the end of the option term and purchased the Property.  Sullivan stayed

current on the rent through the lease's early termination.[1]  Ultimately, by the end of the option term, Homes Etc. was entitled to a total of $24,000 regardless of whether Sullivan exercised the option.  As a result, the superior court did not err in awarding the damages.

## CONCLUSION

**¶20**          For the foregoing reasons, we affirm.  Because Homes Etc. is the successful party on appeal, and because the action arises out of contract, we grant its request for reasonable attorneys' fees pursuant to A.R.S. § 12-341.01(A) (Supp. 2013).  We will award Homes Etc. its costs on appeal and reasonable attorneys' fees upon timely compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
FILED: gsh

---

[1]          Sullivan does not argue and we find no basis to hold that because of Sullivan's breach and the ultimate termination of the lease, that such termination affected either the damages or enforceability of the Agreement.  As noted above in ¶ 4, the Agreement would terminate at the earlier of May 1, 2011, a mutual written agreement by the parties to terminate the option, or closing of the purchase.