NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STEVEN WEDEL, *Plaintiff/Appellant*,

*v.*

OLYMPIAN WORLDWIDE MOVING & STORAGE, INC.,
*Defendant/Appellee*.

No. 1 CA-CV 23-0482
FILED 4-2-2024

Appeal from the Superior Court in Maricopa County
No. CV2023-090050
The Honorable Patricia A. Trebesch, Judge *Pro Tempore, Retired*

**AFFIRMED**

COUNSEL

Bailey Law Firm PLLC, Tempe
By Jenna C. Bailey
*Counsel for Plaintiff/Appellant*

Engelman Berger, P.C., Phoenix
By Damien Meyer, Celeste Tabares
*Counsel for Defendant/Appellee*

_____

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Vice Chief Judge Randall M. Howe joined.

_____

**F U R U Y A**, Judge:

¶1          Steven Wedel appeals the superior court's dismissal of his complaint against Olympian Worldwide Moving and Storage, Inc. ("Olympian") for failure to state a claim. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          We assume the truth of the well-pleaded facts in Wedel's complaint and view them in the light most favorable to him as the non-moving party. *See Date St. Cap., LLC v. Clearcover Ins. Co.*, ___ Ariz. ___, ___ ¶ 2, 540 P.3d 921, 924 (App. 2023). Because Wedel's Sales Agreement is central to his complaint, we consider it in full, despite not being appended to his complaint. *See id.* at 925 ¶ 8 (explaining courts may consider materials central to the complaint even if not appended to it).

¶3          In July 2021, Olympian, a moving and storage company, hired Wedel as a salesperson. A three-page Sales Agreement governed Wedel's compensation and commissions. Under the agreement, Olympian would designate and assign or reassign "sales territories, customers, and product lines to be solicited." As a salesperson, Wedel was responsible for "identifying, soliciting, and securing transportation and warehousing business." He would also "obtain[] the initial credit information . . . includ[ing] bank information, trade references, corporate contact name and the initial request for a letter of authorization."

¶4          The Sales Agreement contained a commissions clause that stipulated Olympian would "compensate [Wedel] in the form of commissions based on revenues derived from the direct sales activities and efforts of [Wedel]" and would pay such commissions "in the month following the load date of the specific shipment." Olympian also reserved the right to adjust commissions "up to a maximum 100%" for a salesperson's non-performance, action, or inaction resulting "with the loss

of revenue or uncollected funds" for a shipment. The end of the agreement contained a termination clause which read:

> 11. Company may terminate this Agreement, with or without cause, at any time. Auto Allowance and advance against commission will cease immediately.
>
> Upon termination of this agreement, Company will pay salesperson for shipments loading up to that termination date. The final settlement will be paid in 30 days from the termination date providing that all shipment details have been verified, charges have been collected and no outstanding issues exist on any shipment therein as well as the surrender and inspection of all company issued equipment.

**¶5** Olympian terminated Wedel's employment on December 20, 2021, at which point Wedel had 28 sales pending to load. On January 5, 2023, Wedel filed a complaint against Olympian, seeking unpaid wages for those 28 sales. Wedel's complaint exceeded the one-year statute of limitations for breach of employment contract claims, including unpaid wage claims. *See* Arizona Revised Statutes ("A.R.S.") § 12-541(3), (5); *see also Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, 218 Ariz. 293, 298–99 ¶¶ 20–23, 300 ¶ 27 (App. 2008) (explaining that unpaid wage claims arise under A.R.S. § 23-355, and as such, have a one-year statute of limitations under A.R.S. § 12-541(3) or (5)). But Olympian waived this defense by not raising it in its motion to dismiss. *See Ritchie v. Krasner*, 221 Ariz. 288, 304 ¶ 56 (App. 2009) (affirmative defense of statute of limitations is waived unless raised). We therefore address the merits.

**¶6** Wedel's complaint alleged that Olympian violated Arizona wage laws and breached the Sales Agreement. Wedel alleged he "expected to be paid his wages for the hours he worked in finalizing these sales agreements" and argued the commission clause obligated Olympian to pay commissions for those sales. Though the complaint quoted the termination clause, it did not address or discuss it in its claim for unpaid wages or request for relief.

**¶7** Olympian moved to dismiss the complaint for failure to state a claim under Arizona Rule of Civil Procedure ("Rule") 12(b)(6). It argued Wedel's "own allegations establish the parties entered into an enforceable contract for compensation that limited [Wedel's] right to payment to shipments loading up to the termination date." Wedel's response focused on the termination clause and argued that it is an "unexpected hidden

term" and is "unconscionable, illegal, [and] against public policy," and, thus, unenforceable. After receiving Olympian's reply, the court held oral argument and concluded "the terms of the agreement between the parties are clear and unambiguous" and, therefore, it had no "choice but to dismiss the complaint."

**¶8**        Olympian requested attorneys' fees and costs in its motion to dismiss under A.R.S. § 12-341.01(A). After considering Wedel's objection and Olympian's reply, the court awarded Olympian its attorneys' fees and costs.

**¶9**        We have jurisdiction over Wedel's timely appeal under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A) and -2101(A).

## DISCUSSION

**¶10**        On appeal, Wedel argues the superior court erred in dismissing his complaint and in awarding Olympian its attorneys' fees.

## I.        The Court Properly Dismissed Wedel's Complaint.

**¶11**        We review de novo orders granting a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Silverman v. Ariz. Health Care Cost Containment Sys.*, 255 Ariz. 387, 390 ¶ 9 (App. 2023). When reviewing a dismissal pursuant to Rule 12(b)(6), "we consider only the complaint and its well-pled factual allegations and assume the truth of those allegations." *Luu v. Newrez, LLC*, 253 Ariz. 159, 162 ¶ 8 (App. 2022) (citing *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419 ¶ 7 (2008)). We affirm dismissal under Rule 12(b)(6) only if, as a matter of law, plaintiffs "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Doe v. Roman Cath. Church of Diocese of Phoenix*, 254 Ariz. 522, 527 ¶ 14 (App. 2023) (quoting *Fid. Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 224 ¶ 4 (1998)).

### A.        The Sales Agreement is Clear and Unambiguous.

**¶12**        Arizona's public policy dictates that "[t]he employment relationship is contractual in nature." A.R.S. § 23-1501(A)(1). "[W]hen parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593 ¶ 9 (App. 2009) (quoting *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., LLC*, 213 Ariz. 83, 86 ¶ 12 (App. 2006)). We look to "the plain meaning of the words in the context

of the contract as a whole" to give effect to the parties' intent. *Id.* Further, wherever possible, we "attempt to reconcile and give effect to all terms of the contract to avoid any term being rendered superfluous." *Terrell v. Torres*, 248 Ariz. 47, 50 ¶ 14 (2020) (as amended).

**¶13** Here, the Sales Agreement clearly and unambiguously limits commission on termination to sales loaded before the employee's termination date. Wedel does not claim the contract is ambiguous and does not challenge its meaning in any other way. Instead, he argues that the commission clause and the termination clause contradict each other. But these clauses address compensation in different scenarios. The commission clause describes when Olympian will pay an employed salesperson commission, whereas the termination clause describes the commission owed a terminated salesperson. These clauses are not contradictory.

**¶14** That conclusion is not new or novel. In *Thermo-Kinetic Corp. v. Oliver*, a contract provision creating a scheme where a salesperson earned half their commissions upon securing a contract and the other half on closing was consistent with a term allowing the employer to retain half of unpaid commissions for unfinished sales at the time of an employee's termination. 22 Ariz. App. 109, 110–11 (1974). More recently, in *Lane v. Statesman Sales & Mktg. LLC*, we examined an employment contract providing that an employer would pay half of the commission for the sale of real property when its employee executed a condo purchase contract. 1 CA-CV 20-0396, 2021 WL 4901487, at *1 ¶ 2 (App. Oct. 21, 2021) (mem. decision), *review denied* (Nov. 1, 2022). After closing and title transfer, the employer would pay the other half of commissions. *Id.* at *1 ¶¶ 2, 6. Under a termination provision of the contract, employees forfeited commission for sales if not employed "at the closing/occupancy date" of those sales. *Id.* at *1 ¶ 3. We concluded the commission and termination provisions did not conflict. *Id.* at *2 ¶ 11. One clause addressed when commission was to be paid, while the other addressed compensation upon termination. *Id.* We held that "[r]eading the contract as a whole, [the termination clause] reflects the parties' intent that salespeople must perform additional duties before closing, and the two-part commission structure . . . is consistent with that intent." *Id.* at *3 ¶ 16.

**¶15** Wedel argues *Lane* is distinguishable because, unlike the employees in *Lane*, he had no remaining duties after ensuring customers signed their contracts. Not so. Our decision in *Lane*, first and foremost, turned on the employment contract's express language. *Id.* at *2 ¶¶ 11–12 (resolving dispute as to contract language). As in *Lane*, this case turns on the express language of an employment contract, which clearly and

unambiguously sets the conditions and terms for payment of commissions after termination occurs. *See id.* The Sales Agreement in this case explicitly provides that only those shipments that had loaded "up to [the] termination date" were subject to payment of any commission. Thus, we enforce the Sales Agreement according to its clear and unambiguous terms. *See Grosvenor*, 222 Ariz. at 593 ¶ 9. Given the express term precluding liability for payment of commissions from sales that loaded after the date of Wedel's termination, it was not reasonable to expect payment of such as wages, s*ee* A.R.S. § 23-350, and therefore, the court did not err in granting Olympian's motion to dismiss under Rule 12(b)(6).

### B.    Wedel's Enforceability Arguments are Unavailing.

**¶16**        The superior court was not required to consider Wedel's enforceability arguments because he did not raise them in his complaint. *See Cullen*, 218 Ariz. at 419 ¶ 7. Wedel's complaint argued that "[u]nder the agreement [he] was to be paid his commissions" because he "expected to be paid his wages for the hours he worked in finalizing . . . sales agreements" for the sales pending to load after his termination. Nothing in Wedel's complaint mentions enforceability, unconscionability, or public policy.

**¶17**        Nevertheless, Wedel argued enforceability in his response to Olympian's motion to dismiss and to the superior court during oral argument. During oral argument, the court asked Wedel if he intended to amend the complaint. Wedel responded he had considered alleging unjust enrichment but "that position is well down the list in terms of what arguments are, I believe." And Wedel never moved to amend his complaint. Further, the superior court did not rely on Wedel's enforceability arguments in its ruling. Instead, the court granted Olympian's motion to dismiss based on the contract terms alone, reasoning that because "the terms of the agreement between the parties are clear and unambiguous" it had no "choice but to dismiss the complaint."

**¶18**        Because Wedel did not include any enforceability arguments in his complaint and the court did not rely on those arguments, we need not address them. *See Cullen*, 218 Ariz. at 419 ¶ 7. *But cf.* Ariz. R. Civ. P. 15(b)(2) (requiring a court to consider issues omitted from pleadings if "tried by the parties' express or implied consent").

¶19       The Sales Agreement clearly and unambiguously stipulates terminated salespersons will not be paid commission for sales loading after their termination date. Taking Wedel's allegations framed in his complaint as true does not change the clear and unambiguous language of the agreement. Therefore, we affirm the superior court's grant of Olympian's motion to dismiss for failure to state a claim.

## II.       The Court Did Not Abuse its Discretion by Awarding Attorneys' Fees to Olympian.

¶20       We review an award of attorneys' fees and costs for an abuse of discretion and will affirm the award if supported by any reasonable basis. *Peterson v. City of Surprise*, 244 Ariz. 247, 253 ¶ 25 (App. 2018). "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A).

¶21       To determine whether to award fees under A.R.S. § 12-341.01(A), courts should consider the following factors: (1) the merits of the unsuccessful party's claims and defenses; (2) "whether the parties could have avoided or settled the litigation and whether 'the successful party's efforts were completely superfluous in achieving the result'"; (3) whether the fee award will cause extreme hardship for the paying party; (4) "whether the successful party prevailed on all relief sought"; (5) the novelty of the issues; (6) whether the claims or defenses are issues of first impression in Arizona; and (7) "whether an award of fees would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney fees." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265–66 ¶ 19 (App. 2004) (quoting *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985)).

¶22       The superior court found factors one, four, six, and seven weighed in favor of the award because: Wedel's claims were meritless; Olympian prevailed as to all relief sought; "[c]laims and defenses involving interpretation of employment contracts are common"; and "the arguments by [Wedel] . . . relied largely on the unfairness of the contract and public policy arguments rather than the plain and unambiguous language of the contract" such that "this matter would have no impact on other actions litigating legitimate contract issues."

¶23        The court found factors two and five were neutral because the parties provided no information regarding whether Olympian's efforts to avoid litigation or settle the dispute were superfluous and there were no novel or unique legal issues involved in the case. The court found the third factor weighed against the award because Wedel claimed he would suffer extreme hardship at the expense of the award. On this record, we find the court provided a reasonable basis for its award pursuant to A.R.S. § 12-341.01.

¶24        We also review the amount of attorneys' fees awarded for an abuse of discretion. *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, 521 ¶ 21 (App. 2009). The superior court has broad discretion in determining the amount of attorneys' fees awarded under A.R.S. § 12-341.01(A). *Vortex Corp. v. Denkewicz*, 235 Ariz. 551, 562 ¶ 39 (App. 2014). After the requesting party submits an affidavit detailing its fees, the opposing party bears the burden to show the fees are improper or unreasonable. *In re Indenture of Tr. Dated January 13, 1964*, 235 Ariz. 40, 52–53 ¶ 47 (App. 2014). But the opposing party "does not meet his burden merely by asserting broad challenges to the application" and must do more than "simply state . . . that the hours claimed are excessive and the rates submitted too high." *Id.* (quoting *State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 594 (App. 1992) (citation omitted)).

¶25        In Wedel's response to Olympian's application for fees, he challenged the length of time spent on various tasks. Each of Wedel's complaints combines several entries. For example, Wedel argues seven hours spent "to review a substantively two-page responsive letter" was excessive. But those seven hours accounted for six separate tasks, the longest of which was 2.5 hours spent doing research and drafting a letter. He also argues four hours of time, spread across 15 tasks was excessive. Wedel did not provide any other argument or information as to his belief that the fees were excessive other than to argue large sets of tasks took too long. None of the individual entries Wedel cites are facially excessive. On this record, the superior court did not abuse its discretion to award Olympian its requested fees.

**CONCLUSION**

**¶26**      We affirm.

**¶27**      On appeal, both parties request an award of their respective attorneys' fees and costs. Olympian cites A.R.S. § 12-341.01 in its request. After consideration and in the exercise of our discretion, we award Olympian, the successful party, its reasonable attorneys' fees and costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:   AA